And I think you know about our lighting system and you have a readout now on your side of the podium that gives you, tells you how much time you have left and I remind you that rebuttal is for rebuttal only. We call the case, it's Lisa Jo Chamberlin v. Fisher and we hear first from Ms. Cameron. Good afternoon, your honors. May it please the court. I'm Cameron Benton. I'm with the Attorney General's office in Mississippi and I represent the appellant in this matter. And I apologize in advance, my voice, I'm recovering from bronchitis so my voice, I'm the infirm one this time. I hope my voice holds out. You sound better than one of my colleagues. I can't talk. Three days ago I couldn't talk at all so this is an improvement, although I sound like a heavy smoker. I apologize for the diversion. The state of Mississippi takes appeal from the district court's grant of habeas relief in this case. And this arises out of the capital murder conviction of Lisa Jo Chamberlin for the double murder of Vernon Hewlett and his girlfriend Lisa Hunselman. Chamberlin also had a co-defendant, Roger Gillett, that also received the death penalty for these crimes. During trial, during jury selection, the state exercised seven of its peremptory strikes, seven of 12 peremptory strikes against African Americans. And Chamberlin lodged a challenge under Batson to those strikes. The state proffered its nondiscriminatory reasons citing to juror questionnaires. Specifically with regard to two jurors who are at issue as far as the district court is concerned, the state cited to three questions from those questionnaires. And limited its reasons, its race neutral reasons to those three questions. The defense then came back and attempted to rebut those, but as the state Supreme Court found on two occasions, only would cite reasons why those jurors in defense's opinion would make good jurors and never rebutted the state's race neutral reasons. The state contends that the district court's grant of habeas relief is erroneous because it failed to pay deference, any deference, to the state court rulings on this claim. And the Batson claim is the only claim reviewed by the district court in this matter, and it's the only claim before this court. Do you read the district court as relying on D1 or D2? Well, Your Honor, I think it's a little bit fuzzy, but definitely proceeded under D1 when it held that the state court failed to apply a clearly established federal law. And the district court interpreted that clearly established federal law as being Miller L, and that Miller L requires state courts to conduct a comparative analysis when considering a Batson challenge. So it clearly proceeded under D1. Perhaps under D2? I would say perhaps under D2 because it proceeded to address the merits of the claim very scrupulously and thoroughly to address the merits of the claim, looking at each juror that was struck and comparing them to jurors that were not. And it substituted, Frank, without any deference, it substituted its opinion for that of both state court opinions, finding that two jurors, Thomas Sturgis and David Minor, were discriminated against when compared to Mr. Cooper, a juror who was accepted by the state but I think nonetheless struck by the defense. Even if the district court did do a D2 analysis and applied the wrong level of deference, I mean, we review all this de novo, so couldn't we just, if you're right, look at, do the D2 analysis on our own, providing the proper deference? I think if you review it with the proper deference under the AEDPA, I think this is no contest. I know Judge Costa, you, the last time we were here, kept asking me, well, what about under D2? How do we get around D2 and Miller L? And I've had some time to think about that, obviously. And in my opinion, in the state's position, this case doesn't come close to Miller L. It doesn't rise to the level of Miller L. All you have here are three questions on a juror questionnaire. That, by the way, was never presented, the comparison was never made to the trial court. It was not made on direct appeal. It was for the first time made in post-conviction review. And the court, the Mississippi State Supreme Court, looked at that comparison in PCR and said, no, you failed to carry your burden. There's no purposeful discrimination here. So how you get around D2, how you get around Miller L, is all you have here are the three questions that point to discrimination. But that's not all the evidence. That's all that supports discrimination, in my opinion. Miller L, you had jury shuffling. You had disparate questioning. You had a history on the part of the district attorney's office for discrimination. I believe there was a handbook that showed them how to and instructed them how to discriminate. We have nothing of the sort here. We have very limited and I think insignificant proof if you look at the totality of the circumstances and not just focus on these three questions. And that's where I think the district court additionally erred. It refused to consider or when it did consider all evidence, it minimized that which did not support a finding of discrimination. In your view, what's the prosecutor's race-neutral reason for striking the two black jurors, Sturgis and Miner? What was the race-neutral reasons? He cited three questions in these lengthy juror questionnaires, and that was questions number 30, number 34, and number 35, when he was asked to give his reasons for striking those two jurors. Those three questions, and I'll try to be brief, the first one, are you emotionally capable of standing up in court and announcing your verdict as to the defendant being put to death? They all three answered not sure. Will you hold the state to a greater burden of proof than the law requires? Because this is one, this case is one in which a death penalty may be imposed. They all three answered not sure. The last one, for example, because this case involves the death penalty, would you want to be 100% certain, even though the law permits you to return a verdict guilty, if you have a doubt so long as the doubt is not a reasonable one? And they all three answered yes to that. And by all three, I mean Mr. Sturgis and Mr. Minor and then the comparator, Mr. Cooper, who, again, was never presented to trial court or on direct appeal. But that's not all there is to consider as it relates to the Batson claim. The state argued this in its brief, and I'm not attempting to interject alternative theories, but the state was never permitted to give all the reasons that it might have chosen Mr. Cooper over these two jurors because Mr. Cooper was never brought up in front of the courts, either at trial or on direct appeal. This is neither. We're going back to where we were. Well, exactly. Miller-Ell and Reed are both the same situation. The comparator jurors were not brought up in the state court direct proceedings or at trial, and still the Supreme Court and Miller-Ell and our circuit and Reed still looked at that comparator white juror in conducting the analysis. So how do you get around that? How do we get around that? Reed, as you I'm sure know, is from the same district attorney's office as Miller-Ell was, so you had the same problems with the district attorney's office, the history of discrimination, jury struggling, disparate questions. But I'm saying just in conducting the comparator juror analysis, how are you able to look at justifications that weren't given at the actual trial? I think what you can do if you don't want to call it a justification or additional justification is say that Mr. Cooper is not similarly situated to Mr. Minor and Mr. Sergis in that his views on the death penalty were far more stronger than these two men. And the state pointed this out. Based on those answers? Not on these three answers, sir. You're looking beyond. Yes, sir. Beyond what the prosecutor gave as a reason. Yes, sir. How do you get around the language that the prosecutor has got to say, let's say the court can consider only the state's asserted reasons for striking a black juror and compare that with the treatment of the white juror, and the prosecutor must give his best reason for the challenge and stand or fall on that reason? Well, again, Your Honor, if I'm not being clear, I think you can say that Mr. Cooper, the white juror, is not similarly situated for the purposes of comparison. Based on other answers. Based on other answers and characteristics of that juror, of Mr. Cooper, who obviously defense struck so they didn't want him on there probably because of his views on the death penalty, which were far more expressive and stronger than Mr. Miner or Mr. Sturgis. You're not telling me how you get around that quote, that we can only consider the asserted reason for striking the black juror. Well, all the other cases, in conjunction with Millerill and Batson and all their progenies, say you have to look at all the evidence, all the circumstances. I think it doesn't produce a reliable or a true result to just look at these three answers, particularly in this case where this comparator, Mr. Cooper, was never pointed out by the defense at trial or on direct appeal. And they did, however, for the first time, point to him in PCR, and the state court looked at it, specifically said, we're going to look at these questionnaires and the responses, and the state court still said the defendant had failed to carry her burden of proving purposeful discrimination, of pointing to a viable comparator for purposes of Batson analysis. But it's not just a matter of oh, on appeal, on habeas, now you can pick out these comparative jurors. You only get to that whole part of the process if there's been a prima facie showing of discrimination when the Batson challenge is made. And my understanding is that's not been contested, that there's that prima facie showing that then allows the state to give its reasons and then you go to the third stage. But it's only going to be an issue when there's a prima facie showing of discrimination, right? What would only be an issue? You only get to comparative juror analysis. You're saying it seems too nitpicky to look at these answers of just a few people. I understand all that. But you only get to that point someone makes a Batson challenge. There has to be a prima facie showing. If the judge says there's not even a prima facie showing of discrimination, it's end of story. Go on, pick the jury. Go to trial. Get your verdict. There's no Batson issue. Well, here at trial the judge did express doubt as to whether a prima facie case had been made. But the prosecution sort of interjected its reasons without a clear ruling on that. And at that point the prima facie case becomes moot, as I understand the case law. And for that reason the state never challenged that the prima facie case had been made. And I don't think we have room to do that here today since we're certainly well beyond that. But you get to the comparison, as I appreciate it, at the third step when you have to look at has the challenger, has the claimant carried her burden of proving purposeful discrimination. And that's when you look at all the circumstances that bear upon the issue. I'm giving you Judge Clement's question. This question, when the prosecutor responds to a Batson challenge, does he have to explain his rationale for keeping certain jurors, in this case Cooper, and how would that work? I don't think case law requires him to explain a reason for keeping a juror. He just has to give his reasons, race-neutral reasons, why he struck a particular juror. In this case, again, Cooper was never raised. Nobody called attention to Cooper. And my suspicion is, as trial goes in the fluid environment of selecting a jury, the prosecutor is not standing there thinking about every juror that responded to these three questions alike. I do believe, had defense pointed to Mr. Cooper at trial, I think that the prosecutor could have then said, well, his views on the death penalty, we've got to have Mr. Cooper on the jury, which, again, is ultimately why he was struck by the defense, because of his strong views. Part of the reason, I mean, this case is where it's at now. Typically, even in Miller-Ellen, some of these cases we've been talking about, and I think even the Batson case the Supreme Court decided last month, the prosecutors are typically giving a lot more reasons for excluding people in most of the cases I've seen. And here it's a narrow set, and so that's why you're in this situation where, you know, that you think is not painting, as you put it, a full picture. Why we're here, sure. Right. But wouldn't you agree that normally in these cases the prosecutor gives, oh, I don't like his job, and I don't like he gave me a look, you know, he wasn't paying attention, he had his head down, and I don't like his views on the death penalty, and he was wearing a hat, and right? In my experience, that has been the case. The prosecutor will come forward with lots of reasons. But as to each of these jurors that were struck, and although we're focusing on two, he did go through the questionnaires, and that's how he responded in support of his strikes, was to point to answers on the questionnaires, almost exclusively, if I remember correctly. Certainly as to these two jurors, which the district court found discrimination, he exclusively responded pointing to their answers to these questionnaires. And I'd also like to point out, since you mentioned the cases recently on Batson, I think as I counted there have been four in the last year, and that would be Davis v. Aiello, I think I'm saying that correctly, a Woods case, a Kernan case, which the state submitted in a 28-J letter, and the Foster case, which Ms. Chamberlain's attorney submitted in a 28-J letter. All of those cases, with the exception of Foster, are habeas cases. Foster was a cert review, but the three cases, Davis, Woods, and Kernan, all reversed based on failure of the district courts or the circuit courts to pay deference under the AEDPA. And I think that fits squarely where we are today. If we adopt a rule that you suggest, that after the case is tried and we're up here on habeas, you don't hold the prosecutor to the objections that he makes. He rises or falls on his objection. Doesn't that let the state then scowl the record and try to find some reason, why the prosecutor might have challenged him? I mean, is that a good rule? Well, I think that's been flatly rejected, that that's not permissible. But isn't that what you're doing now? That is not what I'm doing. That's not what I'm advocating, although I think the reverse of that is true. I think defendants and claimants who lodge bats and challenges have years to pick apart the record and bring up any reason they can glean from the record to make a bats and challenge, even though it wasn't presented at trial, even though no state court had an opportunity to rule on it properly, at least as argued now. Nevertheless, I'm not advocating that we try to justify the prosecutor strikes post hoc. I'm suggesting that under a comparative analysis, you can say, it's permissible to say, that Mr. Cooper is not similarly situated to these two defendants that the district court found. That's what you would always say if you found some other reason that they could have distinguished between these two people. I mean, that's what you'd always say. Sure. I'm not sure any other way that we would have out. The only other way is to do what the Supreme Court said and make the prosecutor stick to the reasons that he gave. And I'm not taking away from that at all. You know, let's stick the prosecution with these reasons, and let's look at these answers to the three questions. But that's not all the evidence, Your Honor, and that certainly doesn't mean that these three jurors are identical for purposes of comparison. And I think that— You're probably not going to ever find two prospective jurors who are identical. I agree with you. Let me strike that and let's say substantially similar. And I think in this case where they were seeking the death penalty, the fact that Mr. Cooper's views were so much more pronounced, and he even wrote separately in his questionnaires to explain that he was in favor of the death penalty, is a substantial difference in this case. But your point that, well, on habeas, years after the fact, you're always going to be able to find some juror who had a similar answer on one question, I mean, that's why it goes back to my point that in the typical situation that's much harder to do when the prosecutor's given a number of reasons why they've struck someone. I think that is. But Batson doesn't prohibit, you know, countless reasons for— And there may very well be countless legitimate reasons why you would strike somebody. That's what I'm saying. I don't think it's going to cause the problems you're talking about if the ruling below, because in most cases there are so many reasons given by the prosecutors. It's not hard on—or it is hard on habeas to find someone who's similarly situated along all those different lines. Here there's only these narrow answers that were the basis. Right. And under the ADPA, I think this Court has written and I know the Supreme Court has written, if that is a high standard to meet, it was meant to be. It's not, you know, it's one of the highest standards there is under the law. I can say I'm about out of time, but in my view this case is not all about the comparative analysis, but it's more about deference and the absence of deference in this case. And I think if you review, even if you want to get to the merits of the Batson claim, if you review the merits of those claims through a deferential lens, I think it's no contest. I think the State prevails. And I think the District Court impermissibly substituted its judgment for that of the State Court. And I'm almost out of time. Thank you. Ms. Carlisle. May it please the Court. I'm Elizabeth Carlisle. I'm here today with my colleague Michael Cowan on behalf of Lisa Jo Chamberlain. And on behalf of Ms. Chamberlain, we contend that the District Court properly found a Batson violation and the judgment should be affirmed. I'm going to address many of the questions that you asked, Ms. Benton, but let me say a couple of things first. The first one is that Batson is not a technicality. What the U.S. Supreme Court has said over and over is that discrimination on the basis of race and the use of peremptory challenges impacts the integrity of the entire judicial system and jury system and impacts the rights of citizens to serve as jurors. And so when we're talking about, you know, how this works, we're not talking about some small issue that affects only one person or even only affects criminal defendants. It affects the whole justice system. Ms. Benton has pretty much gone over how the jury selection process happened here. There are a couple of things I wanted to point out. The way the system that this court used was that the prosecutor was the first person to pass on each juror. So once the prosecutor—I know in other courts I've practiced in, you know, both sides might have strike lists and sometimes there would be double strikes. There wasn't that opportunity here because what happened was the prosecutor was told to tender 12 jurors, so he had to expressly say, I accept this juror, I strike this juror. And that was what he did, and then they sort of went back and forth until they finally had 12 jurors. But that's significant because it wasn't that he just didn't think about Mr. Cooper. He specifically accepted him as a juror and struck Mr. Sturgis and Mr. Minor. It's also worth noticing that—I know you mentioned, Judge Costa, that he only had one reason, the prosecutor. He didn't ask Sturgis or Minor a single question. So he couldn't very well have based his decision to strike Mr. Sturgis or Mr. Minor on any personal encounter he had with him. What he based it on was the reasons for the strikes, and you're right. Every explanation he gave had to do with the reasons—with questions on the questionnaire. That was the only thing he talked about. I know in the—one of the things that is sometimes said about reasons that are discovered later for— or suggested later for why the prosecutor might have done this is that that reeks of afterthought. I suggest to you that this particular pattern kind of reeks of forethought. Like, you know, I can't get inside the prosecutor's mind, but he was certainly ready with answers on the questionnaire as reasons to strike each African-American juror, and there's no showing that there was a lot of hesitation about it. Before we get to— How long was the questionnaire? It's a long questionnaire. It's like seven or eight pages. I think there are 50-some-odd questions on it. But the parties had the questionnaires beforehand. They weren't sitting there, you know, trying to figure them out when jury selection was going on. I mean, as a practical matter, it seems like it would be awfully difficult for a prosecutor to have in mind what each prospective juror had answered on every one of the questions so that when he— I guess when he—you know, when he asks a question in open court to know whether he's— he's now answering something that's contrary to what's on the questionnaire. Well, I could see that might be a problem if he'd asked them any questions in open court, but of course he didn't. So he relied strictly on the questionnaire. He relied strictly on the questionnaires in what he said, and he apparently relied strictly on the questionnaires in making his strike because he didn't question any of those jurors. And the court in Miller L. said that's significant. You know, if you think these issues are so important, you know, we sort of wonder about that if you didn't ask them about them. Before we get to the sort of the mechanics of the analysis, I think it's important to notice that the reason that the district judge had a problem with what the Mississippi Supreme Court did was because the way the Mississippi Supreme Court expressed their opinion about these cases was at serious odds with the framework that's been laid out by this court in Reed and also by the U.S. Supreme Court, more importantly, in Batson and Miller L. and Snyder. I didn't think defense counsel in the Mississippi Supreme Court had argued for a comparative juror analysis. They didn't argue for a comparative juror analysis on direct appeal. That's correct. But they did on post-conviction, and I'll get there in a minute. But even on direct appeal, what the court said was that Ms. Chamberlain had a burden to, as the court put it, rebut the reasons offered by the prosecutor. And because she didn't do that, the court said the state's reasons for the challenges were the only considerations before the trial judge. That's not what Batson and Miller L. say. They say that whatever the defense does, the trial court and the reviewing court has to consider all of the circumstances surrounding the jury selection, not just the state's reasons for the challenges. And that's what the Mississippi Supreme Court said it did. So it's not just a matter of saying, well, the defense didn't bring up comparative juror analysis. The Mississippi Supreme Court was much narrower than that. I mean, they didn't even say, looking at the whole voir dire, it looks okay to us. They said the only considerations before the trial judge were the reasons for the challenges. But the district court said it was required to conduct the comparative analysis, and you agree with that? Well, I would say that, I mean, I think, you know, as this court said in Reed, I think, you know, when you look at Miller L. and Snyder, it sure sounds like it because the court in that case was so clear that the federal court is supposed to consider all the aspects, and that includes comparative juror analysis. But frankly, I'm not sure that, I mean, I think Ms. Chamberlain is entitled to relief even if you don't think necessarily that the U.S. Supreme Court has said comparative juror analysis is required because I think what is clear from the record is that the Mississippi Supreme Court not only didn't conduct comparative juror analysis, but specifically limited its review in a way that is not permitted by Batson and Miller L. and Snyder, you know, whether or not comparative juror analysis is a specific requirement. And what happened on post-conviction, you know, I understand that, you know, sort of the sense of, you know, gee, it's not really fair to the Mississippi Supreme Court that the defense didn't say, you know, compare the jurors. Well, the Mississippi Supreme Court had a second chance because on post-conviction an issue was raised about whether Ms. Chamberlain's trial counsel were ineffective for not presenting a comparative juror analysis, and in making that contention, the post-conviction counsel, by the way, I was post-conviction counsel, so I know well, presented the same comparative juror analysis to the Mississippi Supreme Court as is presented here, and the Mississippi Supreme Court got it wrong again. The Mississippi Supreme Court said, A thorough review of the record in this case, including the jury questionnaires provided by Chamberlain, discloses that each of the African-American jurors struck had at least one response in his or her jury questionnaire that differentiated him or her from the white jurors who were accepted by the state. And I think, Judge Davis, you pointed out that there are no identical jurors. That's what it says in Miller L. when it says the jurors aren't cookie cutters. And so the Mississippi Supreme Court, again, expressly contradicted that rule when it said we're not going to find that there's a problem with not presenting a comparative juror analysis because there were no identical jurors. So the district judge is in a position where he has a state court ruling that clearly doesn't follow federal law in the way it analyzed the factual issue, which is behind Miller L. And I'll admit that I think the habeas judge's opinion is a little bit confusing. I think it's on page 28. Let's see here. I'm not sure that I'm going to find it. But on that page, the district judge said in the first place, I'm not going to give deference to this fact finding because it's clearly not the fact finding that's required by the U.S. Supreme Court. And then he went on to say, however, Ms. Chamberlain still has to prove that the state court ruling was an unreasonable finding of fact based on the evidence in the record, which is, of course, the D2 standard. And that's what he said he applied. So, I mean, I'm not sure we're in a position where it makes a whole lot of difference. Judge Costa, you asked couldn't we do the same D2 analysis, we meaning this court. I believe that the findings of fact of the district court are binding on this court unless they're clearly erroneous. So I don't think you review the district court's fact findings de novo, although you do review its conclusions of law de novo, obviously. So what I'd like to do now is kind of turn to the whole question of the facts and what they were. Oh, sure. If the prosecutor ultimately offered four black jurors on a 12-person jury and black jurors made up about one-third of the jury pool to begin with, where's the evidence of discrimination? If that had been what happened, you certainly would probably be short of a prima facie case. That's not what happened here, though. What happened here was that there were 42 people in the final veneer. 31% of them were black and 69% of them were white. The prosecutor struck 62% of the black prospective jurors and 17% of the white prospective jurors. And so what? The prosecutor struck 62% of the black prospective jurors, that is to say eight out of 13, and 17% of the white prospective jurors, that is five out of 28. I think the cases have established that the trial court can kind of skip over the prima facie case step and ask the prosecutor to give reasons, and when he does that, then the prima facie case issue is moved. But I think there clearly was a prima facie case here. What about the state's point that Miller L. had the history of discrimination in the Dallas DA's office? There's no such evidence here. It's certainly true that this case probably relies more on comparative jury analysis than many. I think you kind of pointed out one reason why that's the case. The record here is relatively thin. There certainly isn't a history of discrimination, or there may be a history, but there certainly was no evidence of a history of discrimination in this particular prosecutor's office. But I really don't think, I mean that was certainly an issue in Miller L. and in Reed, but I really don't think that that was what the decision turned on. What the courts did in those cases was to look at each juror specifically. What do you do with language? I think it's in Miller L. and Snyder and all the cases. They go through the business of the prosecutor has got to make his best objection and he's stuck with it, and the court can consider only that reason is given, but then they say the court determines whether the defendant has shown purposeful discrimination in light of all the facts and circumstances. Now isn't there tension between that last statement and their earlier statements? There is some tension between it, but I think the way the court resolves that, and Judge Reeves actually did it rather well here, I mean rather clearly, is the prosecutor is asked at the time he makes the strike or at some point, and in this case it was at the time he made the strike, why did you strike that juror? And since the issue in the case is really not would Mr. Cooper have made a good juror for the state or not, but rather did the prosecutor discriminate against Mr. Sturgis and Mr. Minor on the basis of their strikes when he struck them, what the prosecutor says when you ask him why did you do that, particularly as in this case when we have the benefit of his being asked the question right when he's doing it, is entitled to a lot of weight in figuring out what's in the prosecutor's mind, which is really the issue. Now Judge Reeves didn't just say well these are the three questions, these are the three answers, and I'm going to stop there. He looked at a good bit of other evidence that compared Mr. Cooper, Mr. Sturgis, and Mr. Minor. He talked about the fact that they had similar education levels. He talked about the fact that one of them, I'm not sure I've got this pulled up quickly, but Mr. Sturgis and Mr. Minor had, one of them at least, had a relative who was a law enforcement officer, unlike Mr. Cooper. Mr. Cooper had a child who had been convicted of a crime, unlike Mr. Sturgis and Mr. Minor. So he really, I mean he did far more than just say these are the three questions, these are the three answers, I'm going to find bias. Now he actually considered the fact that the state is now telling us is so important that Mr. Cooper answered another question by saying his views on the death penalty were stronger than those of Mr. Sturgis and Mr. Minor. And what Judge Reeves said, and I think it's fair, is if the state thought that was so important, the state should have said something about it, and the fact that the state didn't is also a circumstance to be considered. So it's not the case that the only circumstances that can be considered are the reasons that the prosecutor used. It is that the prosecutor can't come up with other reasons later. And I think that's what the state would like this court to let it do, and the Supreme Court has just said pretty definitely that that's not proper. Oh, I did want to talk a little bit about Davis versus Ayala, which the attorney for the state mentioned. Davis versus Ayala was a case about whether it was okay for the trial court to make the prosecutor, allow the prosecutor to give his reasons in the absence of the defense lawyer. And ultimately the U.S. Supreme Court said that it was in fact okay to do that because based on a variety of factors, including some comparative analysis and some other things, the petitioner hadn't met his burden to show that there was in fact discrimination under the Batson standard. But the Davis versus Ayala is not really about whether – it's not primarily about whether the Batson standard was met. It's primarily about whether that particular procedure was proper, and eventually the state held that it was. The court – the state also in its brief cited White versus Wheeler, which is another fairly recent U.S. Supreme Court case, but it's about – which does in fact talk about 2254D2 deference. But it is a Witherspoon case. That is, it's about whether the trial court judge properly permitted a challenge for cause of a prospective juror because his views on the death penalty would have impeded his service. And that's not – the standard for Witherspoon is simply not, you know, consider all the circumstances of the whole or dire. It's consider what this juror said. So I don't think – I mean, I don't think the analysis of deference there is particularly helpful to this court. And the 28 – the case that the – the Kernan case that was cited in the 28J letter by the state likewise is kind of apples and oranges. The issue there was does the habeas court have to give deference to an unreasoned decision of the state court? Basically what the U.S. Supreme Court did was to disagree with the court below that the last state court reasoning was not a reason on the merits. In this case, it's clear we've got two state court reasons – two state court cases with reasons on the merits, and the question then is how the habeas court establishes them. But the – I think that to the extent that Judge Reeves was required to give deference under 2254D2, he did. I think his factual findings, based on all of the circumstances of the case which the Mississippi Supreme Court told us it did not consider, were correct. And I'd ask that his judgment be affirmed. All right. Thank you very much. Ms. Benton, back to you. Your Honors, I'd like to just start off where Ms. Carlisle ended and say that Judge Reeves paid no deference to the state court opinions. And he clearly said, for that reason, AEDPA deference to those factual findings is not required. That's clear. I can't even see that any other way. And then he proceeded to review the merits of those with absolutely no deference. And I think the Supreme Court's recent opinions, which Ms. Carlisle tried to distinguish, I've been truthful with the Court about what those holdings are and why they may not all be directly applicable to Batson. There are Witherspoon issues and I think a confrontation violation issue. They are all similar and helpful to the State's position in that they talk about the AEDPA, and they talk about and reaffirm the deference that's required under habeas review, and the deference that was not applied here was clearly set aside here based on the district court's own words. I'd also like to talk briefly about the statistics and those cited by Ms. Carlisle. She said there were 42 people left in the venire from which the jury was chosen. She said there were 31 percent black, 69 percent white. And the resulting jury, if I'm not mistaken, and I'm not so great at math, but the resulting jury included two African Americans because the defense struck two. So the State tendered four African Americans and the defense struck two. Had those four African Americans been set on the jury, that would have been representative of the overall racial makeup of the venire. In other words, roughly with four African Americans on the jury, it would have been roughly 30 to 33 percent African Americans, which is what was consistent with the makeup of the jury pool is what I'm trying to get out. Also, I think Ms. Carlisle argued some language and tried to attack the direct appeal of the Mississippi State Supreme Court in saying that Chamberlain failed to offer any proof the State's reasons were pretextual. Therefore, the only reasons the Court can consider were those offered by the State. And then the Court went on to hold that Chamberlain had failed to rebut the State's race-neutral reasons. But that's not what the district court took issue with. The district court flatly took issue saying that the State court failed to conduct a comparative analysis, period. Therefore, I'm not going to pay deference to those factual findings. Ms. Carlisle argued that this Court is to presume that the district court's factual findings are correct. But again, I would point out that's not what the AEDPA says. The AEDPA specifically says that State court determinations of factual issues made by a State court shall be presumed to be correct. So it's State court factual findings that are owed deference. And the district court did say, and I think the opposing counsel said there's a little bit of inconsistency, after he says there was a D-1 violation, he does say, therefore, AEDPA deference is not warranted as to the factual findings that you've recited. But then the very next paragraph he says, Chamberlain, nonetheless, must carry her burden of proving purposeful discrimination. And for purposes of our review, she must demonstrate that the State court's findings were unreasonable in light of the evidence presented, citing Woodward, Miller, L, and then he gives even more. It must be wrong to a clear and convincing degree. Isn't that the AEDPA standard for reviewing State court factual findings? That's part of the AEDPA standard. What's missing? What's missing is, I believe this court wrote in an unpublished opinion, Sells v. Stevens, but it cited Valdez v. Cockerell. And it's talking about under D-2 and E-1, which is the presumption of correctness supporting those factual findings, this court said, these intersecting standards allow us to grant habeas relief based on a factual issue only if the petitioner demonstrates both an incorrect factual determination, which I don't think we have here, by clear and convincing evidence, and that it compromised the overall objective reasonableness of the State court's decision. And I don't think the district court, well, it obviously paid no deference to the State court factual findings. And I would say that particularly in the PCR opinion, the Mississippi State Supreme Court's PCR opinion, it looked at the exact same evidence. Ms. Carlisle just said we presented this comparison to the State Supreme Court, the same comparison. The Mississippi State Supreme Court looked at that. And it found that Ms. Chamberlain failed to carry her burden. That's entitled to a presumption of correctness. It's entitled to deference. And I don't believe that Judge Reeves afforded that opinion any deference whatsoever or the factual findings. Which State court ruling do you think we review? I mean, my opinion is on direct review in the State court. They brought their bats in claims. And that's the one where the defendant did not even raise comparative juror analysis. But, I mean, that's what we're reviewing. That's the rejection of the bats in claim. The State habeas ruling was only an ineffective assistance claim that premised on bats in. But isn't it the direct State appeal that we're reviewing? In my opinion, it is. And that's the one with which the district court sort of took issue with. But it also played back and forth. And I believe also Ms. Chamberlain's brief sort of finds the middle ground and doesn't ever call it if it's a direct appeal opinion or if it's a PCR opinion. But I do believe the district court was talking about that direct appeal opinion primarily. But, again, it still failed to afford any of those findings deference. And I think in today's climate and certainly from these last three or four opinions out of U.S. Supreme Court, that's not good enough. I don't think we have clear and convincing evidence here that discrimination occurred. And if there are no further questions, the State would rely on its brief for the remainder of the arguments and ask that you reverse and remand Ms. Chase back to the district court. Thank you.